STATE v. ALBERT HELMS.

(Filed 11 May, 1921.)

1. **Spirituous Liquors—Intoxicating Liquors—Criminal Law—Possession
—Prima Facie Evidence—Questions for Jury.**

   The unlawful purpose of sale of spirituous liquors is the offense made
   indictable by our statutes, whether the indictment be under C. S., 3385
   or 3386, and not the possession thereof for lawful purposes, though the
   possession of the specified quantities is *prima facie* evidence of the illegal
   purpose, and does not establish a *prima facie* case of guilt. C. S., 3379.

2. **Same—Burden of Proof—Instructions—Appeal and Error—Trials.**

   The possession of the specified quantity of spirituous liquor sufficient to
   make out *prima facie* evidence of an unlawful purpose is only sufficient to
   sustain a verdict of guilty, and does not shift the burden upon the defend-
   ant to show his innocence, and an instruction to that effect is reversible
   error.

3. **Same—Verdict Directing.**

   Where the possession of the specified quantities of intoxicating liquors
   under our statute, C. S., 3385, has made out *prima facie* evidence of guilt,
   and the defendant has not introduced evidence, an instruction to the jury
   placing the burden on the defendant to establish his innocence is reversi-
   ble error, being equivalent to directing a verdict, which is not permissible
   in a criminal case.

4. **Trials—Motions—Evidence—Nonsuit—Statutes—Criminal Law.**

   A motion as of nonsuit upon the evidence will not be considered when
   it is not renewed after the conclusion of all the evidence, as the statute
   requires.

5. **Spirituous Liquors—Intoxicating Liquors—Possession—Prima Facie
   Evidence—Volstead Act—Statutes—Federal Statutes.**

   The Volstead Act, title 2, sec. 25, has no application to an action in the
   State Court wherein the possession of specified quantities of intoxicating
   liquors under our statutes, C. S., 3385, 3386, makes out *prima facie* evi-

dence of guilt, and an instruction that it made a *prima facie* case sufficient to place the burden on the defendant to establish his innocence is reversible error.

CLARK, C. J., dissenting.

APPEAL by defendant from *Ray, J.,* at the January Term, 1921, of UNION.

The defendant was indicted under a bill which in its first count charged him with the possession of intoxicating liquors for the purpose of selling the same. Its second count was as follows: "Did receive said liquor other than by common carrier, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State." He was convicted upon the second count, and from the judgment upon such conviction appealed.

The evidence upon which he was convicted was as follows:

Frank Irby testified: "That he was policeman of the town of Monroe; that he searched the premises of the defendant on 6 November, 1920, in the town of Monroe, under a search warrant; defendant was present and said there was no liquor in his house; found a fruit jar containing some liquor in a closet; defendant said he had a small quantity for his sick baby; found another fruit jar containing small quantity in the same place; found a bottle of liquor under the meal or flour box, and found a jar full in another room on a shelf in some quilts, the house occupied by defendant and his family; found several other vessels that smelt of liquor."

J. W. Spoon, chief of police of Monroe, testified to the same effect.

At the conclusion of the State's evidence, defendant moved for judgment as of nonsuit on count in bill charging unlawful receipt of liquor. Motion was overruled, and defendant excepted.

He then offered the evidence of several witnesses as to his good character. At the conclusion of this evidence he did not renew his motion to nonsuit.

His Honor charged the jury on the second count as follows: "It is provided by law in this State that it shall be unlawful for any person, firm, or corporation, at any one time, or in any one package, to receive in the State of North Carolina for his or her own use, or for any other purpose, or for any other person, firm, or corporation to have in their possession for any other purpose any spirituous, vinous, or malt liquors in greater quantity than one quart, or any malt liquors in greater quantities than five gallons. That the State has to satisfy you beyond a reasonable doubt that the defendant had more than a quart of liquor in his possession.

"If the State has satisfied you beyond a reasonable doubt under the definition which I have given you already of reasonable doubt, and the

testimony that it has offered, that the defendant had the liquor in his possession, although it was in different parts of the building, and he inhabited the building it was in, and that the liquor was there belonging to him, the burden of proof being upon the State and the presumption of innocence in favor of the defendant, more than a quart of liquor, then the State has met, as the court charges you, the requirements of law, and made out a *prima facie* case, and then it would devolve the laboring oar upon the defendant to satisfy you, not beyond a reasonable doubt, but to satisfy you that he did not receive the portion of whiskey he had then, slightly over three quarts, that he did not receive this liquor within fifteen consecutive days. That he did not receive it at times when fifteen consecutive days had intervened between the receipt of the first, second, or third quart, that he received it in that way."

(To the foregoing part of his Honor's charge the defendant excepts.)

"If you believe the evidence of the State, have no doubt about it on the second count of the indictment, the presumption being in the defendant's favor and the burden on the State, nothing else appearing, the court instructs you to return a verdict of guilty of receiving whiskey unlawfully, as charged in the bill of indictment."

(To the foregoing part of his Honor's charge defendant excepts.)

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Vann & Milliken for defendant.*

ALLEN, J. It cannot be seen from the indictment or the charge of the court whether the defendant is charged with violating sec. 3385 of Consolidated Statutes, which makes it unlawful to receive at one time and in one package more than one quart of spirituous or vinous liquors or intoxicating bitters, or more than five gallons of malt liquors, or under sec. 3386, which prohibits any person, firm, or corporation from receiving during the space of fifteen consecutive days, whether at one time or in one package or not, "any spirituous or vinous liquors or intoxicating bitters in a quantity or quantities totaling more than one quart, or any malt liquors in a quantity greater than five gallons," but under either the instructions to the jury are erroneous and prejudicial to the defendant.

We note the charge, which is not excepted to, that it is unlawful to possess more than certain quantities of intoxicating liquors, for the purpose of correcting a misconception of our statutes. It is not against our law to have in possession liquor, lawfully obtained, for one's own use, but it is indictable to have any quantity in possession for the purpose of sale, and the possession of more than one gallon is *prima facie* evidence of the illegal purpose.

It was also error to charge that proof of the possession of more than one quart of liquor made out a *prima facie* case against the defendant, and if this was a correct statement of the law it was erroneous to give to this *prima facie* case the legal effect of devolving the laboring oar on the defendant to satisfy the jury that he did not receive the liquor within fifteen consecutive days.

The possession of more than one gallon of liquor is made *prima facie* evidence of having it for sale by statute (C. S., 3379), but no such artificial weight is given to the possession of one quart, and such fact is simply a circumstance for the consideration of the jury.

Nor does a *prima facie* case, when legally established, cast the burden on the defendant to satisfy the jury of his innocence. It is sufficient to carry the case to the jury, and upon it alone the jury may, not must, convict, but the burden remains with the State to prove the guilt of the defendant beyond a reasonable doubt.

It was so held in *S. v. Barrett,* 138 N. C., 630, and in the later case of *S. v. Wilkerson,* 164 N. C., 437, which has been frequently affirmed, and in which it is said, "It may, therefore, be taken as settled in this Court, at least, and we believe the same may be said of most, if not all, of the courts, that *prima facie* or presumptive evidence does not, of itself, establish the fact or facts upon which the verdict or judgment must rest, nor does it shift the burden of the issue, which always remains with him who holds the affirmative. It is no more than sufficient evidence to establish the vital facts without other proof, if it satisfies the jury. The other party may be required to offer some evidence in order to prevent an adverse verdict, or to take the chances of losing the issue if he does not, but it does not conclude him or forestall the verdict. He may offer evidence, if he chooses, or he may rely alone upon the facts raising the *prima facie* case against him, and he has the right to have it all considered by the jury, they giving such weight to the presumptive evidence as they may think it should have under the circumstances.

"The defendant is not required to take the laboring oar and to overcome the case of the plaintiff by a preponderance of evidence, is what we said in *Winslow v. Hardwood Co., supra,* and substantially the same thing was said in the other cases we have cited. This is undoubtedly the rule in civil cases, and it applies with the greater force to criminal cases, where the defendant has the benefit of the doctrine of reasonable doubt, and the presumption of innocence." *S. v. Bean,* 175· N. C., 749, affirms the *Wilkinson case,* and is directly in point.

In view of these erroneous instructions, the final direction to the jury, based upon them, was equivalent to directing a verdict, which is not permissible in criminal cases. *S. v. Alley,* 180 N. C., 663.

The motion to nonsuit was not renewed after the introduction of evidence by the defendant, and it cannot therefore be considered. *S. v. Killian,* 173 N. C., 792.

We have not discussed the prohibition amendment or the Volstead Act, because, in our opinion, not pertinent to any question raised by this appeal, but it may not be amiss to say that it would be a strange application of law to hold that a defendant, being tried in the State courts for violating a statute of the State, could be convicted because he had violated a Federal statute, or that giving to the Volstead Act the effect of striking down all provisions of State statutes in conflict with its terms it should have further operation to render a citizen of the State indictable under a State statute, which has had a material part stricken out without the consent of the General Assembly, and which as thus changed has never had the approval of the General Assembly.

It is also well to note that under the Volstead Act, as construed by the Supreme Court of the United States in *Street v. Lincoln Safe Deposit Co.,* decided 8 November, 1920, it is not unlawful *to possess* liquor in one's dwelling, and that it was held in that case that, "Volstead Act, title II, sec. 25, making it unlawful to possess liquor intended for use in violating that act, does not make unlawful possession in a storage warehouse by one who intends to use the liquor in his own home for his family and guests, which is permitted by sec. 33 of the title."

This conclusion was reached upon a construction of sec. 33 of the Volstead Act, which is as follows: "It shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only, and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling, and of his *bona fide* guests when entertained by him therein."

New trial.

CLARK, C. J., dissenting: The defendant was indicted in the first count for having in his possession intoxicating liquor for the purpose of unlawful sale, and in the second count in that "He did receive said liquor other than by common carrier, contrary to the form of the statute," etc. The jury returned a verdict of guilty of receiving. The only exceptions besides the refusal of a motion of nonsuit and to set aside the verdict are the following to the charge of the court:

1. "If the State has satisfied you beyond a reasonable doubt under the definition, which I have given you already, of reasonable doubt, by the testimony that it has offered, that the defendant had the liquor in his possession, although it was in different parts of the building, and he inhabited the building it was in, and that the liquor was there belonging

STATE *v.* HELMS.

to him, the burden of proof being upon the State and the presumption of innocence in favor of the defendant, more than a quart of liquor, then the State has met, as the court charges you, the requirements of law and made out a *prima facie* case, and then it would devolve the laboring oar upon the defendant to satisfy you, not beyond a reasonable doubt, but to satisfy you that he did not receive the portion of whiskey he had there— slightly over three quarts—that he did not receive this liquor within fifteen consecutive days, that he did not receive it at times when fifteen consecutive days had intervened between the receipt of the first, second, or third quart, that he received it in that way."

2. That the court erred in charging the jury as follows: "If you believe the evidence of the State, have no doubt about it on the second count of the indictment, the presumption being in the defendant's favor, and the burden on the State, nothing else appearing, the court instructs you to return a verdict of guilty of receiving whiskey unlawfully as charged in the bill of indictment."

The defendant offered no evidence whatever except witnesses as to his good character, and he did not renew his motion to nonsuit at the conclusion of the whole testimony, which motion therefore we do not consider. *S. v. Killian,* 173 N. C., 792.

The evidence by the State of the defendant's possession of three quarts and his previous denial of having any when the officers approached the dwelling, was uncontradicted, and the court properly told the jury that if they believed the evidence for the State beyond a reasonable doubt, "the presumption being in the defendant's favor—to return a verdict of receiving whiskey unlawfully as charged in the bill of indictment." *S. v. Fore,* 180 N. C., 744 (*Allen, J.,* for unanimous Court); *S. v. Reed, ante,* 508; *S. v. Pearson, post,* 589, top of page.

There is no charge in the bill in regard to the fifteen days. The statute of North Carolina, 3386, makes it unlawful for "any person, firm, or corporation, during the space of fifteen consecutive days, to receive any spirituous or vinous liquors in a quantity or quantities totaling more than a quart, or any malt liquors in a quantity greater than five gallons." But the Eighteenth Amendment to the United States Constitution provides: "After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited"; and the Volstead Act, sec. 35, provides: "All provisions of law that are inconsistent with this act are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as in addition to existing laws."

The Supreme Court of the United States, in *Rhode Island v. Palmer,* 253 U. S., 350, said: "The first section of the amendment—the one embodying the prohibition—is operative throughout the entire territorial limits of the United States, binds all legislative bodies, courts, public officers, and individuals within those limits, and of its own force invalidates every legislative act, whether by Congress, by a state legislature, or by a territorial assembly, which authorizes or sanctions what the section · prohibits."

The Volstead Act, known officially as the "National Prohibition Act," ratified 28 October, 1919, sec. 3, provides: "No person shall, on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish, or possess any intoxicating liquor *except as authorized in this act,* and *all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."* This being of supreme authority, strikes down any and every provision in any act of Congress or of the Legislature or in the constitution of any state, which modifies or interferes with this provision.

It will thus be seen that this provision being self-executing, eliminates from our statute the authority to receive one quart of spirituous liquors for beverage purposes every fifteen days, but leaves in force the prohibition against receiving it at all.

C. S., 3386, thus amended by the force of the Eighteenth Amendment and the Volstead Act, reads as follows: "It is unlawful for any person, firm, or corporation to receive any spirituous or vinous liquors or intoxicating bitters," etc., subject, of course, to the exceptions provided in the Volstead Act, which, being in other clauses of the act, are, under the settled decisions of the courts, matters of defense which must be set up and proven by the defendant. *S. v. Burton,* 138 N. C., 578, and cases there cited and citations thereto in Anno. Ed.

The evidence in this case, as recited to the jury in the charge of the court and sent up as a part of the record, is as follows: "That on 6 November, 1920, at the defendant's home here in Monroe, a search warrant was taken by Mr. Frank Irby and J. W. Spoon, chief of police, who searched the defendant's premises; when they approached his dwelling they asked him if he had any whiskey in his possession, and he declared he did not have anything; they proceeded with the search and found in one room a portion of whiskey in a cupboard, in a second they found another portion of whiskey between two quilts; in the cook room they found a bottle of whiskey in the flour bin under the dough board, it being concealed; when they found the first whiskey they asked the defendant what he had that for, and he said he had it for the baby; there were four different receptacles of liquor found; two fruit jars with a quart in each, which have been offered in evidence and which you have

seen. One fruit jar full of whiskey—they being half-gallon jars—and a pint bottle full of whiskey."

C. S., 3385, makes it unlawful for any one, "at any one time or in any one package, to receive" in this State for his use or for the use of any one, "or for any other purpose, any spirituous or vinous liquors or intoxicating bitters in a quantity greater than one quart." So far there is no conflict with the Volstead Act, except limiting the quantity to one quart, which makes no difference here, as the defendant had more than that quantity, and the Volstead Act strikes out the limitation "at any one time or in any one package." The other provision in C. S., 3386, limiting the unlawfulness to cases only where such quantity has been received "during the space of 15 consecutive days," is also a modification and restriction upon the Volstead Act, and is therefore stricken out by virtue of that act enacted under the authority of the Eighteenth Amendment.

There are numerous authorities in our State which make restrictions (when valid) a defense which should be set up and proven by the defendant. *S. v. Burton,* 138 N. C., 578; *S. v. Blackley, ib.,* 622; *S. v. Connor,* 142 N. C., 701, 702; *S. v. Long,* 143 N. C., 674, and many other cases.

However, it is not necessary to discuss this proposition for the power of the Federal Government as expressed in the Volstead Act enacted under the Eighteenth Amendment strikes out the modification which makes the receipt of a quart not unlawful "if extended over a period of more than 15 days."

It devolved upon the defendant to set up as a defense and prove that the receipt and possession of the liquor found in his possession comes under some one of the exceptions provided in the Volstead Act. This the defendant did not attempt to show. The sole evidence offered in his behalf was as to his good character, as to which the court instructed the jury without any exception from the defendant.

The charge of the court in regard to the 15 days limitation, even if erroneous, was therefore absolutely surplusage and immaterial. It was an error in favor of the defendant. The bare, uncontradicted evidence in this case is that the defendant was found in possession of more than three quarts of liquor, that he denied it until it was found, on a search of his house, and he has offered no evidence to bring himself under the exception in the Volstead Act which would have justified his possession. The jury found the evidence for the State to be true beyond all reasonable doubt, and indeed the defendant did not contradict it, and the law made that fact unlawful.

The State could not enact any valid statutory provision which would make legal the possession of liquor under circumstances not coming within the exceptions in the Volstead Act, and that act struck out any such provision which was in any statute, State or Federal, prior to the commission by the defendant of this offense.

The United States Supreme Court has held that the Fifteenth Amendment was self-executing, and struck out, *ex propio vigore,* any statute or constitutional provision in conflict therewith. *Guinn v. U. S.,* 238 U. S., 347; *Myers v. Anderson, ib.,* 369; *U. S. v. Mosley, ib.,* 383; and it has held the same as to the Eighteenth Amendment, *Rhode Island v. Palmer,* 253 U. S., 350 (both of which amendments were ratified by this State), and we have recognized the same effect as to the Ninteenth Amendment, which this State did not ratify, by the admission of women to suffrage. When the supreme power has spoken it is not necessary to wait for any state to modify its statutes to conform. The conflicting provision in any statute, State or Federal, is automatically stricken out.

Under the State statute, as amended by the Federal statute, striking out the modifying clause of 15 days given the defendant in which to receive a quart, the defendant was clearly guilty, and there was no error in the charge of which he had the right to complain.