### STATE *v.* BURNS *ET UX*.

#### (130 S. E., 641)

1. Intoxicating Liquors—"Storing" and "Keeping in Possession" Defined.—"Storing" and "keeping in possession" contraband liquors involves more than mere having in possession of such liquors, "storing" meaning the laying away for future use, and "keeping in possession" meaning to have habitually in possession.

2. Intoxicating Liquors—Facts Sufficient to Warrant Finding of Storing Supports Conviction, Whether Sufficient or Not to Establish Offense of Keeping.—Act of storing contraband liquors under Cr. Code 1922, §§ 820, 860, and 873, in separate and distinct offense from act of keeping in possession; hence facts sufficient to warrant finding that defendants were guilty of storing, whether sufficient or not to establish offense of keeping, would support conviction under count charging storing and keeping.

3. Intoxicating Liquors—Evidence Held to Show an Intention of Storing by Defendant.—In prosecution for storing and keeping contraband liquor, evidence showing that accused poured liquid from pitcher into sink while officers were effecting entrance, and that pitcher smelled of corn whiskey, *held* to give rise to inference that whiskey was intended for future use, thus showing a storing by defendant.

4. Intoxicating Liquors—Evidence Held Sufficient to Warrant Finding That Both Husband and Wife Were Guilty of Storing Contraband Liquor.—In prosecution for storing contraband liquor, against husband and wife, evidence *held* sufficient to warrant finding that both husband and wife were guilty of offense charged.

5. Husband and Wife—Force or Weight of Presumption That Wife Committing Criminal Act Was Coerced by Husband is for Jury. —Where criminal act is committed by wife in husband's presence, inference or presumption of coercion by husband is not a presumption of law or irrebutable, but is merely one of those presumptions or inferences classed as *prima facie,* force or weight of which, in absence of other facts which make such *prima facie* inference the only reasonable inference, is for triers of facts.

6. Intoxicating Liquors—Burden is on Defendant to Establish Defense of Lawful Possession.—In prosecution for storing and keeping contraband liquor, where defendant claims that storing or possession was not unlawful because within exceptions in statute, burden is on him to establish such defense.

7. Intoxicating Liquors—Failure of Defendant to Assume Burden of Proving Lawful Possession, Offered as a Defense, Does Not as Matter of Law Conclude Him or Forestall Verdict.—Failure of defendant to assume burden of defense of lawful possession of contraband liquors by offering evidence thereon does not os a matter of law conclude him or forestall the verdict, and it is incumbent on State to prove guilt beyond a reasonable doubt, and upon that general issue burden remains with State throughout trial.

8. Criminal Law—Instruction Stating That it Would be a Difficult Thing to Get Liquor Lawfully Held Entrenchment Upon Domain of Jury.—In prosecution for storing and keeping

contraband liquor, defense being lawful possession, instruction expressing opinion that it would be "difficult thing to get it lawfully" *held* entrenchment upon domain of jury, under Constitution, Article 5, § 26.

Before RICE, J., Greenville, March, 1925. Reversed and new trial ordered.

J. A. Burns and wife were convicted of wilfully and unlawfully storing and keeping contraband liquors and they appeal.

*Messrs. Dean, Cothran & Wyche,* for appellants, cite: *What amounts to "Storing and keeping in possession":* 63 S. C., 98; 41 S. E., 18; 109 S. C., 411; 96 S. E., 142. *Criminal acts of wife done in husband's presence:* 30 C. J., 791 and 792; 4 Blackstone, 28; 114 A., 143; Cheves, 120; 1Strob., 159; 1 McC., 355; 2 McC., 465; 29 S. C., 108; 6 S. E., 943; 65 S. C., 161; 43 S. E., 518. *Charge on facts prohibited:* Const. of 1895, Art. V, Sec. 26. *Directed verdict proper:* Rule 27, Supreme Court.

*Mr. J. G. Leatherwood, Solicitor,* for respondent.

December 1, 1925.

The opinion of the Court was delivered by MR. JUSTICE MARION.

The defendant, J. A. Burns, and his wife, Minnie Burns, were tried jointly upon an indictment containing five counts, of which three—charging that the defendants (1) "did wilfully and unlawfully receive and accept for unlawful use" contraband liquors, (2) "did wilfully and unlawfully receive, accept, and have in their possession" contraband liquors, and (3) "did wilfully and unlawfully store and keep" contraband liquors—were submitted to the jury. They were convicted upon the one count which is last enumerated —that charging them with "storing and keeping." The defendants have appealed upon exceptions which make the three contentions: (1) That the evidence was insufficient to convict of the offense charged; (2) that under the eviden-

tial facts both the husband and the wife could not as a matter of law be found guilty; and (3) that the trial Judge charged upon the facts.

The evidence adduced by the State tended to establish the following facts: Three or four officers of the law went to the defendants' residence for the purpose of making a search. They had a search warrant. Mrs. Burns was seen just outside the front door, talking to a man. The sheriff said, "We have got a warrant for you." Mrs. Burns jumped inside the door and slammed it. The officers ran to the house and found both the front and the back door locked. They proceeded to break in. When the officer at the back door had broken out a panel, he saw Mrs. Burns at the kitchen sink with a pitcher pouring something out of it. She then put the pitcher on the table. The officer then entered and followed Mrs. Burns toward the front of the house. As he got in the next room, Mr. Burns came from the side with a double-barreled, "sawed-off shotgun." Burns claimed to have been asleep, had that appearance, and the bed looked as if he had just gotten out of it. The back-door officer disarmed Burns. He then went back to the kitchen and found a colored girl, 8 or 10 years old, with the pitcher in her hand. There were 4 or 5 ounces of disinfectant in the pitcher. She had a glass in which there was some disinfectant. The pitcher smelled of corn whiskey, and the kitchen sink smelled of corn whiskey. In a kitchen cabinet was found a pint bottle with about a couple of inches of corn whiskey in it. The pitcher was a gallon pitcher. The evidence tending to establish the foregoing facts, if believed, was sufficient to support the inferences: (1) That the defendant Mrs. Burns made an effort to delay the entrance of the officers into her house; (2) that this delay was utilized for the purpose of pouring out whiskey from a gallon pitcher; (3) that an effort had been made to conceal the character of the former contents of the pitcher by putting disinfectant therein; (4) and that there had been more than

a quart of whiskey in the house when the officers started
the raid; and (5) that both Mr. and Mrs. Burns knew of
the whiskey in the house and were parties to the act of hav-
ing and keeping it there.

As to the appellants' first contention that there was no
evidence to support a finding of unlawful storing and keep-
ing: That contention, as we understand it is predicated
largely, if not wholly, upon the meaing of the terms "stor-
ing" and "keeping in possession" as defined in certain of
our previous decisions. In *Town Council of Easley v. Pegg,*
63 S. C., 98; 41 S. E., 18, this Court said:

"We think the offense of storing and keeping in possession
of contraband liquors involves more than the mere having
in possession of such liquors. 'Storing' means, as stated in
the request, the laying away for future use; keeping in pos-
session means to have habitually in possession. The Cen-
tury Dictionary gives among the definitions of 'keep' the
following: '8. To have habitually in stock or for sale. 9.
To have habitually in attendance or use. * * * 19. To
maintain habitually.' The offense of storing and keeping
in possession contraband liquors involves the idea of con-
tinuity or habit."

The foregoing definition of the words "storing" and
1-3    "keeping in possession" was followed and approved
in the cases of *State v. Green,* 89 S. C., 132; 71 S.
E., 847. *Newberry v. Dorrah,* 105 S. C., 28; 89 S. E., 402,
and *State v. Bradley,* 109 S. C., 411; 96 S. E., 142. It may
be conceded, therefore, that the "storing and keeping in
possession" of contraband liquor "involves more than the
mere having in possession of such liquors," and that "stor-
ing" means "the laying away for future use," and that
"keeping in possession" means "to have habitually in pos-
session." While the count of the indictment under which
defendants were convicted charged that they did "unlawfully
store and keep in his house," etc., by the terms of Sections
820, 860, and 873 of the Criminal Code (1922), the act of

storing is a separate and distinct offense from the act of keeping in possession (Section 820) or the keeping or having in possession (Section 860), or the keeping (Section 873). If so, it would seem clear without argumentative discussion that facts sufficient to warrant a finding that the defendants were guilty of storing, whether sufficient or not to establish the offense of keeping (to the extent such "keeping" might involve any other or additional element of habit not included in storing), would support a conviction under this count. Limiting the inquiry, therefore, to whether there was any evidence of storing, in the sense of "laying away for future use," the precise question presented is whether the facts that the defendants had in their place of residence as much (inferentially) as a gallon of corn whiskey, contained in a pitcher and a pint bottle, are sufficient to support the inference or finding that this whiskey was "laid away for future use." Appellants argue that the evidence to the effect that Mrs. Burns "had whiskey in a pitcher and that it was poured from the pitcher into the sink when the officers appeared, the whiskey being in the pitcher would be proof that it was for immediate consumption rather than that it was being stored for future use," etc. If the whiskey in the gallon pitcher was not in the house for future use, the only reasonable alternative inference is that it was there for immediate use. The only persons in the house were Mr. and Mrs. Burns, their daughter, and the small negro girl. No convivial social function appears to have been in progress, and there is no suggestion that any member of the household was "drunk or drinking." There is no evidence as to whether the liquor had been obtained or as to a mere temporary possession, as in *State v. Freeman,* 107 S. C., 431; 93 S. E., 13, and in *Newberry v. Dorrah,* 105 S. C., 28; 89 S. E., 402. Indulgence of the inference that all of the whiskey in the house was intended for such immediate personal use, as would preclude the idea of a future use extending over a considerable period of time would not seem

to be required either from the viewpoint of charity or from that of reason. Certainly, in the circumstances indicated, certain of which tended to show an effort to conceal the facts as to the presence of the whiskey, its quantity, etc. (33 C. J., 756, § 498), the inference that the whiskey was intended for immediate use or consumption, rather than that it was "laid (put or placed in position, Cent. Dict.) away for future use," is not the only inference of which the evidence is reasonably susceptible. See *State v. Tooley,* 107 S. C., 408; 93 S. E., 132. *State v. Twiggs,* 123 S. C., 47; 101 S. E., 663. *State v. Fant,* 88 S. C., 493; 70 S. E., 1027. *State v. Drakeford,* 120 S. C., 400; 113 S. E., 307. In that view, the contention that there was no evidence of storing in the sense contemplated by the statute law of the State, and the exceptions directed thereto (1, 5, and 6), must be overruled.

The appellants' second proposition (exceptions 2 and 3), that the facts were insufficient to warrant, as a matter of law, a finding that both the husband and wife were guilty of the offense of storing or keeping, is, we think, likewise untenable. The law applicable is sufficiently fully stated in the case of *State v. Houston,* 29 S. C., 108, 112; 6 S. E., 943, 944 (Simpson, C. J.), as follows:

"The general rule upon this subject is, that when the wife acts under actual constraint imposed by the husband, she will be relieved from legal guilt, if the act is committed in his presence, with the exception possibly in some cases of the higher crimes. 2nd. Where she acts in the presence of her husband, she is presumed to have acted *prima facie* through his coercion, but still this is only *prima facie,* and may be rebutted by testimony. Bish. Cr. Law (7th Ed.), § 385 *et seq.* Hence the question of her guilt is in most cases a question of fact for the jury, under the principles of law above suggested."

We cannot concur in the view that the evidence to the effect that the whiskey was in the residence occupied jointly by the husband and wife, that the

husband was in the house when the raid was made, etc.,
establishes to the exclusion of any other reasonable inference
that the "storing," or the wife's participation therein, was
an act committed by the wife in the presence of the husband.
And even if it conclusively appeared that the act was com-
mitted in the husband's presence, the inference or presump-
tion that the wife was coerced by the husband is not a pre-
sumption of law, or an irrebuttable presumption, but is
merely "one of those presumptions or inferences classed as
*prima facie,*" the force or weight of which in the absence
of other facts which make such *prima facie* inference the
only reasonable inference, is for the jury as the triers of
the facts. *State v. Parkerson,* 1 Strob., 170. Certainly, the
facts here in evidence as to the wife's conduct after the ap-
pearance of the officers on the scene, as to the husband's
being asleep in bed, etc., are as reasonably susceptible of an
interpretation tending to rebut the inference that the wife's
connection with the whiskey was due to coercion as of the
contrary interpretation. Nor does a finding that Mr. Burns
was a party to the storing, acting outside of the husband's
presence or, in any event, not under his coercion, require
the conclusion, as appellants suggest, that the wife alone is
responsible and that the husband "could not be held guilty."
If the whiskey was stored in the place of Burns' residence,
as the evidence for the State tended to establish, the infer-
ence of fact that he knew of the whiskey and was a party to
the act of storing, and that both he and his wife participated
"freely and deliberately" in the act, is clearly warranted.
If so, obviously both he and his wife could be jointly tried
for and convicted of the offense charged. See *State v. Col-
lins,* 1 McCord, 355; *State v. Montgomery,* Cheves, 120;
*Edwards v. Wessinger,* 65 S. C., 161; *City Council v. Van
Roven,* 2 McCord, 465.

The appellants' third and last contention (exception 4),
that a certain statement made by the trial Judge in his charge
to the jury infringed the constitutional inhibition against

charging on the facts, presents a more serious question, The portion of the charge complained of is as follows:

"If you can get it lawfully, then you can have it today, as much as a quart of liquor in your possession. I will admit it would be a pretty difficult thing to get it lawfully."

The offense of storing and keeping "in his house," as charged in the count of the indictment upon which defendants were convicted, was clearly referable to and laid under Section 873 (Criminal Code, 1922), which provides that—

"It shall be unlawful for any intoxicating liquors to be stored or kept except for one's own personal use, or that of his immediate family, or for religious purposes, and then only at his usual place of residence, and only when the same shall have been procured in a lawful manner."

It is undisputed that the small quantity of whiskey which is the subject-matter of this prosecution was in the "usual place of residence" of both defendants. The evidence is clearly open to the inference that it was for personal or family use. The quantity in the house was at best a matter of inference from other facts and circumstances. If under all the evidence the jury could reasonably have found that the whiskey had been "procured in a lawful manner," there is great force in defendants' contention that the State's case was not made out beyond a reasonable doubt and that a verdict of acquittal would probably have resulted. It is apparent, therefore, that the question as to whether the liquor had been procured in a lawful manner was a vital, if not the pivotal, point in the case.

It is true that a *prima facie* case is made out by the State when it establishes the fact of storing or keeping intoxicating liquor. The statute law makes the storing or keeping unlawful, except under certain conditions. Under the well settled rule in such cases, if the defendant claims that the storing or possession was not unlawful, because coming within the terms of an exception or proviso in the statute, or because the possession was for specially

permitted purposes, or under other circumstances which would relieve him from criminal responsibility, the burden is on him to establish such defense. 33 C. J. 746, § 483; *State v. Twiggs*, 123 S. C., 47; 101 S. E., 663; 31 A. L. R., 1; *State v. Williams*, 35 S. C., 344; 14 S. E., 819; *State v. Gewing*, 1 McCord, 574. But the failure of a defendant to assume that burden by offering evidence to bring himself within the exception does not as a matter of law conclude him or forestall the verdict. 'It is incumbent upon the State to prove guilt beyond a reasonable doubt, and upon that general issue the burden remains with the State throughout the trial. 33 C. J., 756, § 499. See *State v. Helms,* 181 N. C., 566; 107 S. E., 228. Upon the issues of fact therefore, as to whether this liquor had been procured in a lawful manner, the defendants had the right to go to the jury upon the State's *prima facie* case and to have all the facts and circumstances considered by the jury; "they giving such weight to the presumptive evidence [adduced by the· State] as they may think it should have under the circumstances." *State v. Wilkinson;* 164 N. C., 437; 79 S. E., 891.,

Upon the trial of the case at bar it was obviously pertinent to the issue of fact as to whether this liquor had been procured in a lawful manner, and therefore entirely proper, that the Court should instruct the jury as to how liquor could be procured lawfully. But when the Court in that connection went further and stated as a fact, or expressed the opinion involving the element of fact, that it would be "a difficult thing to get it lawfully," we are of the opinion that he trenched upon the domain of fact within which the jury's powers are by constitutional mandate (Const. 1895, art. 5, § 26) made exclusive and supreme. That view is reinforced, rather than weakened, by consideration of the context of the charge from which the foregoing expression is taken. The Court said:

"I have just told you how a man might have as much as a quart of liquor in his possession lawfully. If you can

get it lawfully, then you can have it today, as much as a quart of liquor in your possession. I will admit it would be a pretty difficult thing to get it lawfully. You might, by going through a great deal of red tape, get as much as a pint of liquor every ten days, I believe is the Volstead Act, and make your application to the Probate Judge as they used to do and get as much as a quart a month in that way for medical purposes; but if you have any contraband liquor at all, that is liquor that has been unlawfully obtained, in your possession, then you violate this statute here in South Carolina."

However well grounded the opinion of the able circuit Judge, and however sound the inference of fact drawn that the procuring of liquor lawfully would be a "difficult thing," would involve a "great deal of red tape," etc., it was an opinion or inference the jury were entitled to form or to draw for themselves, uninfluenced by the opinion or conclusion of the presiding Judge in that regard. That the Court's expression, regarded as an inference of fact, was of a nature to be of controlling weight with the jury, is apparent. As an opinion it was fairly susceptible of the interpretation by the jury—usually, if not always, keenly sensitive to the attitude of the Judge in such matters—that the Judge thought the defendants on trial had not procured the liquor in their homes "in a lawful manner." In the light of the considerations above suggested as to the right of the defendants to have the issue as to the manner of their procuring the liquor passed upon by the jury and as to the vital character of that issue in this case, it follows that the appellants' fourth exception must be sustained.

The judgment is reversed and a new trial ordered.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and COTHRAN concur.

MR. ACTING ASSOCIATE JUSTICE PURDY: I dissent solely upon the ground that the remarks made to the jury upon which a reversal is based relate to a matter of such common

knowledge that the jury could not in any way have been
prejudiced thereby, and, in the face of such overwhelming
evidence of guilt, the verdict and judgment should not be
disturbed.   In any case where the facts are admitted to be
true, or are not controverted, it is not error to so state in a
charge to the jury.   Here, the facts adverted to by the trial
Judge are known by anybody to be as stated, and hence
known to the jury, and while language which may be con-
strued as charging on the facts should not be indulged in,
such language ought not to be deemed to be prejudical when
it simply states facts, as in this case, as to which there can-
not be a difference of opinion.